BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

AMIE D. ROONEY (CABN 215324)
MAIA T. PEREZ (MABN 672328)
Assistant United States Attorney

150 Almaden Boulevard, Suite 900
San Jose, California 95113
Telephone: (408) 535-5061
FAX: (408) 535-5066
Amie.Rooney@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SANJIV KAKKAR,<br><br>Defendant. | Case No. CR13-0736-EJD<br><br>**UNITED STATES' SENTENCING MEMORANUDUM**<br><br>Date: April 3, 2017<br>Time: 1:30 p.m.<br>Honorable Edward J. Davila |

## TABLE OF CONTENTS


INTRODUCTION ........ 1

DISCUSSION ........ 1

I. Offense Conduct ........ 1

A. Loss Amount ........ 2

B. Losses in the Context of Fraud Related to Mortgage ........ 2

II. Government's Position Regarding Defendant's Objections ........ 4

A. Objection # 1: PSR Paragraph 8 ........ 5

B. Objection # 2: PSR Paragraphs 10, 11, and 21-22 ........ 7

C. Objection # 3: Loss Calculation in PSR Paragraphs 23-25, 29, 31 and 84 ........ 8

D. Objection # 4: PSR Paragraph 37 ........ 10

E. Objection # 5: PSR Paragraph 70 ........ 12

III. The Sentencing Guidelines Calculation ........ 12

IV. The Government's Sentencing Recommendation. ........ 13

A. Burden Of Proof ........ 13

B. Loss Calculation ........ 14

C. Obstruction of Justice ........ 15

D. Lack of Acceptance of Responsibility ........ 17

E. Criminal History and Characteristics ........ 17

V. Restitution ........ 19

VI. Conclusion ........ 20

## TABLE OF AUTHORITIES

### CASES

*Farrow v. United States*, 580 F.2d 1339 (9th Cir. 1978) .......... 5
*United State. v. Davoudi*, 172 F.3d 1130 (9th Cir. 1999) .......... 2, 20
*United States v. Gossi*, 608 F.3d 574 (9th Cir. 2010) .......... 19
*United States v. Peterson*, 538 F.3d 1064 (9th Cir. 2008) .......... 3
*United States v. Yeung*, 672 F.3d 594 (9th Cir. 2012) .......... 2, 3, 20
*United States v Young Ji Chung*, 71 F. Supp. 2d. 66 (N.D.N.Y. 1999) .......... 4
*United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) .......... 13
*United States v. Armstead*, 552 F.3d 769 (9th Cir. 2008) .......... 14
*United States v. Booker*, 543 U.S. 220 (2005) .......... 12, 13
*United States v. Bussell*, 504 F.3d 956 (9th Cir. 2007) .......... 20
*United States v. Connelly*, 156 F.3d 978 (9th Cir. 1998) .......... 10
*United States v. Cortes*, 299 F.3d 1030 (9th Cir. 2002) .......... 10
*United States v. Crowe*, 735 F.3d 1229 (10th Cir. 2013) .......... 4
*United States v. Dhingra*, 371 F.3d 557 (9th Cir. 2004) .......... 17
*United States v. Doe*, 778 F.3d 814 (9th Cir. 2015) .......... 17
*United States v. Fleming*, 215 F.3d 930 (9th Cir. 2000) .......... 10
*United States v. Ginn*, 87 F.3d 367 (9th Cir. 1996) .......... 10
*United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004) .......... 19
*United States v. Graham*, 630 Fed. Appx. 712 .......... 16
*United States v. Grandon*, 714 F.3d 1093 (8th Cir. 2013) .......... 6
*United States v. Gunning*, 339 F.3d 948 (9th Cir. 2003) .......... 11
*United States v. Hunter*, 618 F.3d 1062 (9th Cir. 2010) .......... 19, 20
*United States v. Hymas*, 780 F.3d 1285 (9th Cir. 2015) .......... 3
*United States v. Isaac*, 448 Fed. Appx. 954 (11th Cir. Dec. 12, 2011) .......... 12
*United States v. Jenkins*, 633 F.3d 788 (9th Cir. 2011) .......... 2
*United States v. Kimball*, 975 F.2d 563 (9th Cir. 1992) .......... 5

*United States v. Lindsey*, 482 F.3d 1285 (11th Cir. 2007)........ 4
*United States v. Littlesun*, 444 F.3d 1196 (9th Cir. 2006)........ 6
*United States v. Mallory*, 709 F. Supp. 2d 455 (E.D. Va. 2010)........ 4
*United States v. Marquardt*, 949 F.2d 283 (9th Cir. 1991)........ 11
*United States v. McKinney*, 15 F.3d 849 (9th Cir. 1994)........ 10
*United States v. Morris*, 744 F.3d 1373 (9th Cir. 2014)........ 3
*United States v. Najjor*, 255 F.3d 979 (9th Cir. 2001)........ 14
*United States v. Napier*, 273 F.3d 276 (3d Cir. 2001)........ 4
*United States v. Osinger*, 753 F.3d 939 (9th Cir. 2014)........ 17
*United States v. Quincoces*, 503 Fed. Appx. 800........ 4
*United States v. Ramos*, 923 F.2d 1346 (9th Cir. 1991)........ 10
*United States v. Roberson*, 896 F.2d 388 (1990)........ 5
*United States v. Romero-Rendon*, 220 F.3d 1159 (9th Cir. 2000)........ 5
*United States v. Rosas*, 615 F.3d 1058 (9th Cir. 2010)........ 17
*United States v. Ruby*, 706 F.3d 1221 (10th Cir. 2013)........ 6
*United States v. Scrivener*, 189 F.3d 944 (9th Cir. 1999)........ 10, 11
*United States v. Showalter*, 569 F.3d 1150 (9th Cir. 2009)........ 5
*United States v. Siciliano*, 601 F. Supp. 2d 623 (E.D.P.A. 2009)........ 4
*United States v. Turk*, 626 F.3d 743 (2d Cir. 2010)........ 4, 8
*United States v. Vanderwerfhorst*, 576 F.3d 929, (9th Cir. 2009)........ 5
*United States v. Watts*, 519 U.S. 148 (1997)........ 4
*United States v. Wendlandt*, 714 F.3d 388 (6th Cir. 2013)........ 4

**STATUTES**

18 U.S.C. § 3661........ 4, 7
18 U.S.C. § 3662........ 19

**RULES**

U.S.S.G. § 1B1.4........ 4, 7

U.S.S.G. § 2B1.1 ..... 2, 14
U.S.S.G. § 2B1.1(a)(1) ..... 12
U.S.S.G. § 2B1.1(b)(1)(I) ..... 12, 15
U.S.S.G. § 2B1.1(b)(16) ..... 12, 15
U.S.S.G. § 3C1.1 ..... 13, 16
U.S.S.G. § 6A1.3 ..... 5, 6

## INTRODUCTION

On November 8, 2016, defendant SANJIV KAKKAR (hereinafter "the defendant") was found guilty following trial of all counts in the captioned Superseding Indictment charging him with one count of making false statements to a bank, in violation of 18 U.S.C. § 1014, and five counts of wire fraud, in violation of 18 U.S.C. § 1343. Sentencing is scheduled for April 3, 2017 at 1:30 p.m.

The government has reviewed the Presentence Report ("PSR") and has no objection to the content of the report, except that the report failed to include an enhancement for the defendant's attempted obstruction at trial. The Probation Officer calculated the defendant's adjusted offense level to be 25; and the defendant's Criminal History Category is I. This results in a sentencing range of 57 to 71 months for making false statements and wire fraud. Officer Mar has recommended that the Court sentence the defendant to 57 months' imprisonment for the false statements and wire fraud, followed by three years of supervised release. Because the government does not believe that this is a reasonable sentencing recommendation, for the reasons discussed below, while taking into account all the sentencing factors under Section 3553(a), including the defendant's attempt to obstruct justice during the trial, the government recommends that the Court impose a sentence of 80 months' imprisonment.

## DISCUSSION

### I. Offense Conduct

As the Court is acutely aware following years of pretrial litigation and twelve days of trial, the government has proved beyond a reasonable doubt that the defendant intentionally lied to the State Bank of India, California when he changed revenue numbers on his 2007 and 2008 tax returns. He lied to the bank to protect and prolong their faith in him and his failing hotel business so that they would think that it was more profitable than it was and not worry or change their minds about the extremely large sum of money they had just promised him. And, he kept right on lying to the escrow company that the bank had intentionally installed between the defendant and their money to provide some oversight protection. The defendant planned to "renovate" the Brookdale on the cheap – paying the smallest amount he could get away with to make superficial changes that would allow him to "flip" the hotel for a profit and pocket the extra money he told the bank he was spending on the rehab.

The government's investigation began in 2009 as a search for an explanation about how the defendant could have been so unlucky as to have suffered three fires in his commercial properties over the course of only 6 years. What the government discovered was a financial muddle that spanned multiple properties, dozens of accounts, insurance claims, and multiple misrepresentations of the defendant, all of which culminated in the foreclosure of the bank on the Brookdale property and the instant indictment. Now, despite the bank being stuck bearing the entire financial burden of the defendant's clear failure and criminal conduct, he continues to argue that there should be no loss. The government heartily disputes that disingenuous position.

**A. Loss Amount**

A court is required to select, for purposes of sentencing, the higher of the intended or actual loss. *See* U.S.S.G. § 2B1.1 n. 3(A) (2011); *United States v. Jenkins*, 633 F.3d 788, 808 (9th Cir. 2011). Actual loss, which is what the government is seeking, is the pecuniary harm that resulted from the offenses. *See* U.S.S.G. § 2B1.1 n. 3(A) (2011). Despite being presented with all of the numbers contained herein, adopted directly from admissible records of the bank, deeds of sale, etc., the defendant now claims that such numbers are not sufficiently reliable and should be summarily ignored. Given the magnitude of the loss and the factual positions he advanced at trial, one can understand the defendant's desire to distance himself from such a loadstone – but, unfortunately, there is no legal or factual basis to do so (nor, indeed, does he cite to any legal basis for his claim that there should be a heightened burden of proof – because he can't). Authority simply does not exist for such a request. The numbers speak for themselves.

**B. Losses in the Context of Fraud Related to Mortgage**

Application note 3(E)(ii) to U.S.S.G. § 2B1.1 provides that "[i]n a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." In the context of a case involving mortgage fraud, the actual sale price of the secured property is an appropriate manner in which to measure the value of the collateral, and determine the actual loss from the fraud. *See U.S. v. Yeung*, 672 F.3d 594, 604 (9th Cir. 2012); *see also U.S. v. Davoudi*, 172 F.3d 1130, 1135 (9th Cir. 1999). Where a

false statement is made in connection with a mortgage, resulting in a mortgage being funded that would not have been accepted had the true information been disclosed or in the bank not taking remedial steps to secure their collateral, then the loss caused by the fraud is the full amount of the mortgage, minus the sale of the property. *See U.S. v. Peterson*, 538 F.3d 1064, 1075-76 (9th Cir. 2008). The Ninth Circuit has rejected defendants' attempt to reduce the loss due to other factors such as the decline in the real estate market, the borrower's loss of employment, and higher interest rates. *Id*. at 1077; *see also U.S. v. Yeung*, 672 F.3d 594, 603 n. 5 (9th Cir. 2012) (finding, regarding restitution, that subsequent events such as the downturn in the real estate market, "does not disrupt the causal chain").

Here the evidence submitted by the victim bank concerns the actual loss to SBIC, based on the sale of the Brookdale Inn and Spa after foreclosure based on the defendant's non-payment and non-performance on multiple terms of the loan (payment of taxes, maintenance of insurance, maintenance of the property, among others). The straightforward calculation takes the difference between the total amount due and payable to the bank at the time of the foreclosure sale, discounts the interest and penalties as directed by the Guideline application notes, and further subtracts the amount that the bank was able to recover by the sale. The amount that the bank is "out of pocket" is the actual loss. This is a calculation that has routinely been used, accepted, and upheld by courts of multiple jurisdictions, including this one. *See e.g., United States v. Hymas*, 780 F.3d 1285, 1293 (9th Cir. 2015) ("We conclude that the district court correctly calculated the losses by taking the principal amount of the loan and subtracting any credits from the subsequent sale of the property.") (*citing United States v. Morris*, 744 F.3d 1373 (9th Cir. 2014)); *United States v. Morris*, 744 F.3d 1373, 1375, (9th Cir. 2014) ("We adopt the two-step approach first articulated by the Eastern District of Virginia, and subsequently adopted by the Second, Sixth, and Tenth Circuits. In calculating loss in mortgage fraud cases, these Circuits hold that the first step is to calculate the greater of actual or intended loss, where actual loss is the reasonably foreseeable pecuniary harm from the fraud. This amount will almost always be the entire value of the principal of the loan, as it is reasonably foreseeable to an unqualified borrower that the entire amount of a fraudulently obtained loan may be lost. The second step is to apply the "credits against loss" provision and deduct from the initial measure of loss any amount recovered or recoverable by the creditor from the sale of the collateral. This second calculation is made without any consideration of reasonable

foreseeability. The resulting amount is the final loss amount. Such an approach is not only dictated by the plain language of the Guidelines and their accompanying commentary, but also ‘necessary to ensure that defendants who fraudulently induce financial institutions to assume the risk of lending to an unqualified borrower are responsible for the natural consequences of their fraudulent conduct,’ no more, no less.”) (*citing United States v. Crowe*, 735 F.3d 1229, 1236-41 (10th Cir. 2013); *United States v. Wendlandt*, 714 F.3d 388, 393-94 (6th Cir. 2013); *United States v. Turk*, 626 F.3d 743, 748-51 (2d Cir. 2010); *United States v. Mallory*, 709 F. Supp. 2d 455, 457-60 (E.D. Va. 2010), aff’d., 461 Fed. Appx. 352, 361 (4th Cir. 2012) (unpublished)); *United States v. Siciliano*, 601 F. Supp. 2d 623, 630 (E.D.P.A. 2009) (*citing United States v. Napier*, 273 F.3d 276 (3d Cir. 2001)).

## II. Government’s Position Regarding Defendant’s Objections

Defendant has objected to the inclusion of certain facts in the presentence report, contending that any factual allegations from the government which served as the basis or was considered in connection with its pretrial motions is not properly included since it does not serve as the basis for the jury’s verdict. The government concurs with the Probation Officer’s response that no such limitation is required or, indeed, permitted.

Under 18 U.S.C. § 3661, “no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court may receive and consider for the purpose of imposing an appropriate sentence.” *See also* U.S.S.G. § 1B1.4 (“In determining the sentence . . . the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law.”).

The Court may properly consider a factual allegation that “has sufficient indicia of reliability to support its probable accuracy, [including] hearsay statements, evidence of uncharged crimes, dropped counts of indictment, and even alleged criminal activity resulting in acquittal when determining sentencing.” *United States v Young Ji Chung*, 71 F. Supp. 2d. 66, 69 (N.D.N.Y. 1999) (*citing United States v. Watts*, 519 U.S. 148 (1997). *See also United States v. Lindsey*, 482 F.3d 1285, 1294 (11th Cir. 2007) (noting that “Booker does not forbid a district court from considering criminal acts for which a defendant has not been charged or has been acquitted as long as those acts are proved by a preponderance of the evidence”); *United States v. Quincoces*, 503 Fed. Appx. 800, 804, 2013 U.S. App.

LEXIS 651, *9-10, 2013 WL 129570 (11th Cir. Fla. 2013); *United States v. Vanderwerfhorst*, 576 F.3d 929, 935, (9th Cir. 2009) ("[A] sentencing judge 'may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come.'") (internal citations omitted*); accord United States v. Showalter*, 569 F.3d 1150, 1159 (9th Cir. 2009). "[H]earsay evidence of unproved criminal activity not passed on by a court," for example, "may be considered in sentencing." *Farrow v. United States*, 580 F.2d 1339, 1360 (9th Cir. 1978); *see also United States v. Romero-Rendon*, 220 F.3d 1159, 1163 (9th Cir. 2000) (holding that the district court may rely on an uncontroverted PSR to establish the factual basis for a sentencing enhancement).

Furthermore, under the advisory Sentencing Guidelines: "in resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indices of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. Following a letter request from the Probation Office, the government provided the probation officer with the discovery materials previously provided to Defendant, including but not limited to, hundreds of pages of agent reports and witness statements. The information contained in paragraphs 8 through 24 of the PSR is a reasonable and truncated summary of the government's evidence.

Other than his general statement that he has "accepted responsibility," defendant has offered no contravening statement to demonstrate that he has in fact taken any responsibility for his crimes. PSR at ¶ 27. Bare assertions are an insufficient basis for the Court to find that the government's evidence is unreliable. *See United States v. Kimball*, 975 F.2d 563, 567 (9th Cir. 1992) ("One cannot allege that 'there are mistakes and then stand mute without showing why they are mistakes.'") (*quoting United States v. Roberson*, 896 F.2d 388, 391 (1990)); *see also Vanderwerfhorst*, 576 F.3d at 936. There is simply no basis for defendant's objection, let alone the wholesale exclusion of this highly relevant information regarding the defendant's criminal conduct in this case.

### A. Objection # 1: PSR Paragraph 8

The defendant first objects to the inclusion of any facts regarding the March 2009 fire at the Abigail Hotel and requests that the entire factual summary included in Paragraph 8 be stricken from the PSR, apart from the first sentence, because of its purportedly doubtful credibility and because the

government elected not to present such evidence at trial.

The PSR correctly notes that the first witness statements regarding the March 2009 Abigail Hotel fire and the defendant's subsequent efforts to "water down" the Abigail were made to investigators in August 2009, mere days after the Brookdale fire. These first witness statements were corroborated by two additional witnesses, all three of whom told investigators that the defendant had taken them to the Abigail on multiple occasions to water down the rooms.

The three witness statements are supported by the significant discrepancy between the $17,000 fire damage estimate made by the San Francisco Fire Department on the day of the fire and the $586,000 repair estimate of the insurance adjuster who viewed the site several days later. PSR at ¶ 9. Moreover, the San Francisco Fire Investigator noted that photographs taken at the time of her investigation show the sprinkler head outside the room where the fire was contained had not activated, and she specifically stated that she did not have to change any of the sprinkler heads in the hotel nor was there much, if any, water in the room where the fire occurred. The Investigator further explained that any extensive water damage would have been included in her report; her report does not reference any water damage whatsoever.

These witness statements, the disparate damage estimates, and the photographs showing the water sprinklers had not activated at the time of the fire investigation, are more than sufficient to meet the indicia of reliability required for consideration by this Court at sentencing. *United States v. Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006) (sentencing court properly considered hearsay testimony when it bore at least minimal indicia of reliability); *United States v. Grandon*, 714 F.3d 1093, 1097 (8th Cir. 2013) (sentencing court properly considered hearsay testimony when corroborated by other evidence); *United States v. Ruby*, 706 F.3d 1221, 1229-31 (10th Cir. 2013) (sentencing court properly considered hearsay testimony from three "relatively neutral witnesses" and defendant's past conduct).

The defendant's further contention that the watering down of the Abigail was the subject of a pre-trial motion to exclude, and that the government did not present this testimony at trial, is inapposite. As explained above, "the court may consider relevant information *without regard to its admissibility under the rules of evidence applicable at trial*, provided that the information has sufficient indices of reliability to support its probable accuracy." U.S.S.G. § 6A1.3 (emphasis added).

**B. Objection # 2: PSR Paragraphs 10, 11, and 21-22**

In his second unresolved set of objections, the defendant objects to the PSR's inclusion of facts regarding (1) the July 2003 and March 2009 fires at the Abigail Hotel; (2) witness statements that the defendant ordered the watering down of the Brookdale; (3) the Brookdale insurance carrier's payment of over $1 million for the fire damage claim; (4) a former employee's statement that the defendant used the employee's personal information to make business purchases without the employee's knowledge or permission; and (5) a contractor's statement that the defendant falsified construction invoices and falsely attributed the invoices to the contractor.

Notably, the defendant does not even attempt to argue that any of this information is unreliable, aside from the statements of the former employee. Rather, he claims that such information is not relevant for sentencing. The defendant's contention ignores the plain provisions of 18 U.S.C. § 3661 and U.S.S.G. § 1B1.4, as discussed above.

More specifically, the defendant's prior history of hotel fires and six-figure insurance payouts may properly be considered by the court as further information and insight into the defendant's background, character, and conduct when evaluating witness testimony and evidence that the defendant ordered employees to water down two of his hotels for purposes of increasing his insurance claim following fires at each of the respective hotels.

Moreover, in the government's pretrial motion to admit evidence of the watering down at the Brookdale, the Court explicitly allowed the admission of witness testimony about the defendant's role in watering down the Brookdale Inn. The Court's finding that such testimony was sufficiently reliable for admission at trial more than meets the lower standard for consideration of this testimony at sentencing. Similarly, the statements by the former employee regarding the defendant's theft of his identity and by the contractor regarding the defendant's falsified invoices relate to exactly the sort of fraudulent monetary scheme for which the defendant was charged and convicted here. The former employee's statements were also corroborated by his prior filing of a complaint with the Milpitas Police Department and the MPD's subsequent investigation of those claims. As previously explained, the fact that neither witness testified at trial is inapposite for purposes of considering their testimony at sentencing.

The information contained in PSR paragraphs 10, 11 and 21 to 22 is both reliable and relevant,

and is therefore properly before the Court for consideration at sentencing.

Lastly, in response to the defendant's objection that the PSR discussed how the insurance carrier paid over $1 million for the Brookdale claim, the Probation Officer added information in the final PSR indicating that the State Bank of India, California, was a co-payee and recipient of the Brookdale insurance payments, which totaled $2.08 million. This added information merits some context. As shown in the documentation provided by SBIC in connection with the restitution calculation (attached hereto as exhibits), the Brookdale insurance payments were received by *the defendant* and placed in a blocked account for the Brookdale loan. The defendant thereafter instructed SBIC to advance funds from the insurance proceeds to make delinquent payments on three of the defendant's past due loans on three of his hotels, including the Brookdale. SBIC complied with the defendant's instructions and made the past due payments, which totaled approximately $1.457 million. At no time did SBIC ever utilize any of the defendant's insurance proceeds without the defendant's consent and direction. It is disingenuous at best for the defendant to claim now that he was not the beneficiary of those funds.

**C. Objection # 3: Loss Calculation in PSR Paragraphs 23-25, 29, 31 and 84**

The defendant takes issue with the calculation of loss asserted by the government and reasonably adopted throughout the PSR. Incredibly, the defendant would have the PSR adopt his view that under Count One, the bank incurred no loss at all by the defendant's fraudulent conduct. The government disputes the defendant's characterization that the original loan was obtained in "good faith" – a claim not supported by all the evidence that he, immediately upon receiving the loan, began submitting fraudulent documents to both the bank and the escrow company. The defendant's argument of "zero loss" from the misstatements is ridiculous on its face and should not be credited now, as it has been specifically rejected by prior courts. *See Turk*, 626 F.3d at 750 ("To accept [the defendant's] argument would be to encourage would-be fraudsters to roll the dice on the chips of others, assuming all of the upside benefit and little of the downside risk.").

The defendant further attempts to reduce the loss calculation by claiming the trustee's sale in April 2013 "was not a fair market value transaction" based on several appraisals obtained by the bank in the six years of defendant's involvement with and ownership of the Brookdale (the years 2007, 2008 and 2011, spanning the greatest economic and real estate decline suffered in the U.S. since the Great

Depression), and accuses the bank of "inside dealing" with regard to the Trustee sale. The defendant claims that the discovery shows the bank had "rejected" other legitimate offers. That is factually inaccurate, unsupported by the evidence, and makes no earthly sense.[1] It is in accord, however, with the defendant's consistent attempt to mislead, shift blame, and obfuscate the true nature of all the documents in this case. As the documents provided by SBIC in support of their claim for restitution show, the County of Santa Cruz appointed a receiver for the bank in September 2012 after the bank had made numerous attempts to work with the defendant to rehabilitate the Brookdale and bring his account back into positive status. Once the receiver was appointed, the court had to approve the sale, which it did in February 2013.

Further, and despite the jury's finding that the defendant committed wire fraud in Counts 2-7 in an amount totaling $510,000, the defendant now claims that particular loss should be discounted by the amount that can be supported by those receipts substantiating actual materials purchased and labor performed. It should be noted that because the PSR adopts the actual loss calculation as to the total amount of the loan, with the credit for the amount recovered by sale, there need be no separate calculation or accounting for the loss attributable to Counts 2-7. But, even in the unlikely event that the Court were to agree with the defendant that there is no loss to be included for being found guilty of Count One, there is no difference under the guidelines as to the level of loss between $510,000 and $450,000 - they both incur the same enhancement. Nonetheless, the government does not agree with this rationalization. As the government demonstrated at trial, in each instance following the receipt of the money from Dixieline, the funds were routed and spent entirely inconsistently with the defendant's claims. Moreover, the government repeatedly demonstrated to the jury and the court that the "receipts" themselves could not be relied upon for accuracy because they were either (1) included repeated times ("double or triple counting"), (2) were for dates which predated the time frame they were purported to cover, or (3) could not be substantiated as being materials for use at the Brookdale (as opposed to for the defendant's other commercial properties or residences). Further, the government demonstrated through the defendant's own bank records, that to the extent any improvements were made to the Brookdale, the

[1] Far from any other viable, higher offers being available, the bank was only able to resell the Brookdale more than a year later in July 2014 at a further loss for $2,775,000.

vast majority occurred prior to six month period covered in Counts 2-7, and were therefore unrelated to those payments. Because the court need only make a reasonable calculation as to the loss, and because the defendant has provided no legal basis for the construction of loss he seeks, the Court should deny these objections.

**D. Objection # 4: PSR Paragraph 37**

The defendant asserts by way of objection that he is entitled to a two-level reduction for acceptance of responsibility because he was "left in the position of being required to put the [g]overnment to its burden of proof to preserve" his immigration position. The government does not believe that he has demonstrated acceptance in even the most basic form, and therefore he is not entitled to the reduction.

Section 3E1.1(a) provides that the district court should reduce a defendant's offense level by two levels "[i]f the defendant clearly demonstrates acceptance or responsibility for his offense[.]" *See United States v. Fleming*, 215 F.3d 930, 940 (9th Cir. 2000) (concluding that a defendant who "maintained that he acted with an empty head but a pure heart" did not accept responsibility for his offense). Under the guidelines, a defendant must also clearly accept responsibility for all of his relevant conduct. *See United States v. Ginn*, 87 F.3d 367, 370 (9th Cir. 1996) (holding that "a defendant is not entitled to an adjustment when he does not accept responsibility for all of the counts of which he is convicted"). If a defendant's statements and conduct make it clear that his or her contrition and remorse are sincere, that defendant is entitled to a reduction. *See United States v. Cortes*, 299 F.3d 1030, 1038 (9th Cir. 2002); *United States v. McKinney*, 15 F.3d 849, 853 (9th Cir. 1994).

The Ninth Circuit has held that: "One example of inconsistent conduct that weighs against a finding of acceptance of responsibility is a defendant's attempt to minimize his own involvement in the offense." *United States v. Scrivener*, 189 F.3d 944, 948 (9th Cir. 1999); *see also United States v. Connelly*, 156 F.3d 978, 982-83 (9th Cir. 1998) (finding it not clearly erroneous to deny the reduction for acceptance of responsibility to a defendant who pled guilty but attempted to excuse his motive for committing the crime); *United States v. Ramos*, 923 F.2d 1346, 1360 (9th Cir. 1991) (affirming district court's denial of downward adjustment for acceptance of responsibility where defendant offered a "minimalist" description of his involvement in the offense); *overruled on other grounds by United States*

*v. Ruiz*, 257 F.3d 1030 (9th Cir. 2001).

The Ninth Circuit has also held that blaming others for defendant's own involvement in the criminal offense is inconsistent with acceptance of responsibility. *See United States v. Gunning*, 339 F.3d 948, 949 (9th Cir. 2003) (finding it not clearly erroneous to deny acceptance of responsibility reduction where defendant blamed "others for what he did"); *Scrivener*, 189 F.3d at 948-49 (concluding that defendant's attempts to minimize his involvement with the crime by blaming his son were inconsistent with acceptance of responsibility); *United States v. Marquardt*, 949 F.2d 283, 285 (9th Cir. 1991) (affirming refusal to apply downward adjustment for acceptance of responsibility where defendant indicated that he had not intended to violate the law and that the authorities "steered" him toward child pornography).

Further, the application notes to Section 3E1.1 make clear that "this adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1, app. n.2.

Here there is absolutely no evidence that the defendant has accepted responsibility for his criminal behavior at all, let alone admitted guilt and expressed remorse. Rather, there is ample evidence from trial, as well as in the PSR, that Defendant continues to seek to minimize his conduct, rationalize the behavior, blame the bank, minimize the amount of restitution owed to the victim, and even undermine the jury's verdict by continuing to claim the government did not prove required elements of the crimes. The defendant provided no statement of the crime to the Probation Officer prior to the drafting of the PSR, and the statement of his wife was that her husband "would not intentionally commit a crime," "had no criminal intention," and that it was nothing but "an unfortunate incident and misunderstanding." There is not so much as a perfunctory "I'm sorry," let alone a statement of remorse. The letter submitted by the defendant does nothing to demonstrate acceptance, includes no affirmative statements that he acknowledges his wrongdoing, and speaks only of his commitment to his family and his desire to avoid deportation as the justification for his trial strategy. In short, there is no acceptance, only fear of the consequences. Moreover, because the government believes that the defendant actively attempted to obstruct justice at the trial (as detailed herein), the acceptance of responsibility reduction is

incompatible in all but the rare case with the obstruction enhancement. *See* U.S.S.G. § 3E1.1, app. n 4. This objection should be denied.

**E. Objection # 5: PSR Paragraph 70**

In his final unresolved objection, the defendant argues against the inclusion of the fact that he has retained counsel as evidence that he has the ability to pay a fine. The Court may properly consider the defendant's retention of private counsel in determining whether Defendant is able to pay a fine. *See United States v. Isaac*, 448 Fed. Appx. 954, 959 (11th Cir. Dec. 12, 2011) (unpublished) (affirming imposition of fine where the sentencing court considered defendant's retention of private counsel as one of four factors in determining his ability to pay a fine); *United States v. Akinlade*, 1997 U.S. App. LEXIS 28611 at *3 (2d Cir. Oct. 14, 1997) (unpublished) (no error where district court considered defendant's retention of private counsel as one of several factors in determining defendant's ability to pay a fine); *Tilllett v.* United States, 1994 U.S. App. LEXIS 12423 at *9 (1st Cir. May 24, 1994) (unpublished) (affirming imposition of fine where defendant's retention of counsel, combined with other factors, could reasonably have led to the conclusion that defendant's low income was only his legitimate income and not his total finances).

Accordingly, the defendant's representation by retained counsel is a relevant and proper consideration in assessing his financial ability to pay a fine, particularly where, as here, the defendant has not otherwise provided completed financial worksheets to the Court. PSR at ¶ 70.

**III. The Sentencing Guidelines Calculation**

Under *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the federal Sentencing Guidelines are "effectively advisory," and that "[t]he district court, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 245-46. *See also* 18 U.S.C. § 3553(a)(4). In the instant case, the starting place is the calculation of the applicable guideline range. Despite the parties' disagreement as to the specific offense characteristics, it is uncontested that all counts are grouped together and use the same calculation framework:

Misstatements to a Bank and Wire Fraud

| | | |
|---|---|---|
| a. | Base Offense Level:<br>(U.S.S.G. § 2B1.1(a)(1) - Fraud and Deceit) | 7 |
| b. | Specific offense characteristics: | +16 |

| | | | |
|---|---|---|---|
| | (U.S.S.G. § 2B1.1(b)(1)(I) - Loss More Than $1,500,000 but less than $3,500,000) | | |
| | (U.S.S.G. § 2B1.1(b)(16) – More than $1M from bank) | +2 | |
| | (U.S.S.G. § 3C1.1 – Obstruction of Justice) | +2[2] | |
| c. | Acceptance of Responsibility: | 0 | |
| d. | Adjusted Offense Level: | 27 | |

The U.S. Sentencing Guidelines provide a two-point enhancement for obstruction if: (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction; and (2) the obstructive conduct related to: (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense. *See* U.S. SENTENCING GUIDELINES MANUAL § 3C1.1 (2016). This includes "providing materially false information to a judge." § 3C1.1 cmt., application n. 4(F). Information is "material" when, if believed, it would tend to influence or affect the issue under determination. *See id.* at § 3C1.1 cmt., application n. 6. Except in extraordinary cases, conduct resulting in an obstruction of justice enhancement ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. *See id.* at § 3E1.1 cmt., application n. 4.

An adjusted offense level of 27, when indexed with Criminal History Category I, results in a guideline range for sentencing of 70 to 87 months' imprisonment.

## IV. The Government's Sentencing Recommendation.

After considering the Sentencing Guidelines and factors outlined in 18 U.S.C. § 3553(a), the government believes that a sentence of 80 months' imprisonment for the false statements and wire fraud, together with payment of restitution, is a reasonable and appropriate sentence.

The instant offense is accurately described in the PSR. [*See* PSR, ¶¶ 8-24.] The Court should consider the following open issues: the loss calculation, the obstruction enhancement, and the lack of acceptance of responsibility. Each is addressed below.

### A. Burden Of Proof

The government bears the burden of proof on the facts underlying the sentencing enhancements.

[2] The government has objected to the PSR's failure to include this enhancement, and the probation officer has left this determination to the Court.

*United States v. Ameline*, 409 F.3d 1073, 1086 (9th Cir. 2005). A district court's findings of fact at sentencing, including those used in calculating the loss amount, must be supported by a preponderance of the evidence. *United States v. Armstead*, 552 F.3d 769, 776-77 (9th Cir. 2008) (applying preponderance standard to enhancements based on the extent of the conspiracy). The amount of loss need not be determined with precision, rather the court need only make a reasonable estimate of the loss. *United States v. Najjor*, 255 F.3d 979, 985 (9th Cir. 2001); *see* U.S.S.G. § 2B1.1 n. 3(C) (2015).

**B. Loss Calculation**

The government is seeking losses related to all seven counts in the indictment, but acknowledges that the loss amount in counts 2-7 is included in the larger loss amount in the fraudulent loan at issue Count One. The government, in calculating the loss, determined (with the benefit of SBIC's civil filings, attached as exhibits hereto) the total amount of the unpaid principal of the loan, as well as the substantial costs (unpaid taxes, security, insurance and maintenance) incurred by the bank during the period of foreclosure, then subtracted from that amount the sale price of the Brookdale after foreclosure. In this way, the government arrived at an "actual loss" amount for purposes of the guideline calculation.[3] The government has attached hereto as Government's Exhibit A the Declaration of Cynthia Sutt and supporting documents referenced therein.

As of June 12, 2012, when despite efforts to allow the defendant to restore his loan to good standing, the bank entered a final default against the defendant for the $6 million loan, the defendant owed to SBIC $5,746,502.86 in principal payments. [Exh. A at ¶ 27.] Between June 12, 2012, and when the property was finally sold on December 2, 2013, SBIC incurred further costs as follows:

Unpaid property taxes on the Brookdale: $367,550.00 [*Id.* at ¶ 37.]

Property Maintenance: $ 83,195.45 [*Id.* at ¶ 34.]

Insurance: $ 87,101.51 [*Id.* at ¶ 33.]

Security: $ 32,380.00 [*Id.* at ¶ 34.]

Thus, the total amount owed as of the date of the sale of the property (not including interest) was $6,316,729.82. [PSR, ¶ 24.] Because the property was sold at the trustee sale, as approved by the court,

[3] The number for restitution purposes is higher, as the interest on the loan is included, as described *infra*.

the total amount to be credited against loss is $ 3,200,000. [*Id.; see also* Exh. A at ¶ 42.] This calculation results in a loss number of $ 3,116,729.82, and therefore warrants an application of the 16-level enhancement under U.S.S.G. § 2B1.1(b)(I). Further, the fact that the defendant's fraudulent misstatements in Count One allowed him to derive gross receipts from a financial institution in excess of $1,000,000 necessitates the application of the additional 2-level enhancement under U.S.S.G. §2B1.1(b)(16).

**C. Obstruction of Justice**

The government continues to object to the Probation Office's failure to include the 2-level enhancement for Obstruction of Justice. The defendant's actions at trial warrant the application of the additional levels where he, through his counsel, sought to introduce documents he knew to be fraudulent during the cross-examination of two government witnesses, in a flagrant and disingenuous attempt to mislead the Court and the jury on a material fact.

In two separate instances during his trial, the defendant attempted to obstruct or impede the administration of justice, as contemplated by this specific enhancement: First, on November 1, 2016, and again on November 4, 2016, both during the cross-examination by the defendant of government witnesses. In the first instance, the defense pursued a line of questioning with Certified Public Accountant, Dennis Young, using a fraudulent document found in the defendant's bank file in order to raise doubts about whether the defendant had used another "bookkeeper" other than his long-time CPA, Mr. Young, to provide financial summaries for the hotel businesses. [*See* Tr. Transcript, Vol. 5, p. 26, ln. 24 through p. 28, ln. 2, attached hereto as Exh. B.] The letter,[4] shown to the witness and the judge but not to the jury at the time, was intended to mislead the court as to a material fact at issue, specifically, that the various hotel Schedule C's found in the files of the State Bank of India could reasonably have been "projections" provided by another financial professional instead of, as the government argued, being altered versions of the filed tax forms prepared by Mr. Young. By cross-examining Mr. Young with this document (which the defense purported to be direct evidence of the existence of another financial professional involved in the defendant's business affairs), the defense

[4] In order to clear up the record and address the blatant attempt to mislead the jury, the government later introduced the same document into evidence as Gov't Exhibit 56.

clearly attempted "to influence or affect the issue under determination" by the jury. In fact, had the jury believed this explanation from the defense, it likely would have been enough to find the defendant not guilty on Count 1.

Instead of leaving this clear misimpression with the jury, the government demonstrated the fraudulence of this document when the purported "second" accountant (or, more accurately, the woman whose name was used on the letter in question) testified during the government's case on November 4, 2016. Far from abandoning this obstructive tactic, on cross-examination, the defendant compounded his attempt to mislead the jury by inserting a second fraudulent document into the proceedings. Ms. Sandyha Suresh denied ever having provided any bookkeeping services to the defendant, let alone having drafted the letter that had been shown to Mr. Young. Rather than leave this line of questioning alone, defense counsel attempted to impeach the truthfulness of this witness' testimony by showing her, in view of the jury, a small card that purported to be her business card listing her as "bookkeeper." Ms. Suresh denied ever having seem this card before, despite it bearing her name and phone number, let alone using it. [*See* Tr. Transcript, Vol. 8, p. 16, ln. 12 through p. 18, ln. 18, attached hereto as Exh. C.]

Further, at the time of closing argument, the defense disingenuously argued that Ms. Suresh only disclaimed her role in the defendant's bookkeeping because she was intimidated by the government's questions, to the point of holding back tears. In essence, the defense asked the jury to believe that she lied about being the Defendant's bookkeeper. Thus, it is abundantly clear to the government that the defendant's sole purpose in using the fraudulent letter, followed up with the fabricated "business card" was to mislead the trier of fact as to the possibility that the tax documents found in the files of the bank were legitimate projections and not misstatements under Count 1 of the superseding indictment. *See* U.S.S.G. § 3C1.1 cmt. n.4(C) (providing examples of covered conduct, "producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding"). Because the government was required to prove that the Defendant made the false statements to the bank knowing them to be false in order to convict the defendant, the presentation of these additional fraudulent documents, and his attempts to impeach the credibility of these two witnesses with the same, was expressly rejected by the jury by its guilty verdict. Thus, the Court can properly apply the two-level enhancement under 3C1.1 based on this willful obstructive conduct. *See United*

*States v. Graham*, 630 Fed. Appx. 712, 715, 2015 U.S. App. LEXIS 20097, *4 (9th Cir. Mont. 2015) (The district court properly determined defendant's fabrication of an email justified imposing a two-level enhancement for obstruction of justice under the Sentencing Guidelines.). The government respectfully requests that the Court include this enhancement in its final guideline calculation.

**D. Lack of Acceptance of Responsibility**

"A district court's decision about whether a defendant has accepted responsibility is a factual determination reviewed for clear error." *United States v. Doe*, 778 F.3d 814, 821 (9th Cir. 2015) (*quoting United States v. Rosas*, 615 F.3d 1058, 1066 (9th Cir. 2010)). The defendant bears the burden of demonstrating acceptance of responsibility, *United States v. Osinger*, 753 F.3d 939, 948 (9th Cir. 2014), and must show "genuine contrition for his acts." *United States v. Dhingra*, 371 F.3d 557, 568 (9th Cir. 2004). The defendant has shown nothing to either the Probation Officer or the government that even vaguely approaches a demonstration of "genuine contrition for his acts." Much to the contrary, the defendant continues to contest the validity of the government's evidence at trial, object to the information the Court can legally consider as background to the instant offenses, minimize the true scope of the damage to the victim bank, and denies the restitution that he plainly owes for the damage he caused. [PSR Addendum, ¶¶ 5, 7, 9, and 11.] This simply does not meet the standard as recently reaffirmed by the Ninth Circuit. *See United States v. Rodriguez*, __ F.3d __, 2017 U.S. App. LEXIS 4429, *38 (9th Cir. Cal. Mar. 14, 2017) ("In his presentence interview, [defendant] expressed his regret for involving himself in illegal activity, and he said how difficult his incarceration had been on his family [ ] stat[ing] that he went to trial because he was not made a reasonable plea offer and therefore had no other choice but to go to trial . . . these statements do not necessarily indicate that he showed genuine contrition for his actions."). With his general statement about wishing to avoid immigration consequences for his criminal activity, unsupported further by any true measure of contrition for his affirmative actions that have placed himself in such lamentable jeopardy, the defendant has failed to demonstrate any acceptance and is thus not entitled to the 2-level reduction.

**E. Criminal History and Characteristics**

The defendant has a prior criminal history of engaging in fraudulent conduct in relation to his business. [*See* PSR, ¶¶ 41-42.] Therefore, despite his and his wife's claims to the contrary, it cannot

be asserted reasonably that this is the defendant's first foray into criminal activity. An elaborate financial scheme against the bank, including the submission of multiple fraudulently altered documents (or, in the case of the Suresh letter and other similar documents and "receipts" found in the bank's file, produced out of whole cloth by the defendant or at his direction) for personal financial gain, conducted over a prolonged period of time, represents a callousness and severe lack of judgment continuing over months – if not years – and cannot be said to be an "aberration." While there may be mitigating factors that the defendant contends weigh in favor of a lower sentence,[5] the government does not believe that he is so different from other similarly situated defendants such that it takes his case outside the heartland of the Sentencing Guidelines. Because he continues to assert his factual innocence as to multiple elements and minimize his conduct and the effect on the victim bank, the government regrettably cannot conclude that the defendant is unlikely to re-offend. He has not taken responsibility in any way for his actions and has declined to make any statements about the instant offense to the Probation Office other than his concerns for his immigration status, has not provided any information in the form of a proffer to the government, and has not agreed to an accurate restitution amount. Although he understandably expresses concern for his family and his children's future should he be sentenced to a term of imprisonment, the government considered that with its willingness to dismiss his wife from her believed participation or aiding and abetting of the conduct in Count One. *See* PSR at ¶¶ 1, 5.

The government is concerned that there seemed to be no real impetus to commit the crimes other than financial motivations – that is, pure greed. The defendant had every advantage of life – a close relationship with his parents (now deceased), continuing contact with his siblings, education and the advantages of immigration to the United Kingdom while still a child, and no indication of domestic violence or substance abuse. [*See* PSR, ¶¶ 48-50.] The defendant has also enjoyed a long and stable marriage to his wife, who despite being initially charged herself with the instant offence, remains supportive and even defensive of her husband. [PSR, ¶ 51.] He enjoys the continued "emotional support" of his wife, sisters, and his children. [PSR, ¶ 55.] According to his wife, the defendant has

---

[5] As of this filing, defendant has not yet submitted his own sentencing memo. The government respectfully requests leave to respond to any proposed mitigating factors orally at the time of the sentencing hearing.

operated his various businesses in the United States for 20 years with no noticeable gaps, made substantial money from his investments allowing him and his family to enjoy an above-average lifestyle, and there seems to have been no outside issues at the time of the refinancing of the loan (pre-dating the 2009 fire of at the Brookdale) which can reasonably explain the genesis fraud. The defendant himself has not offered any explanation for criminal activity. [PSR ¶ 27; PO sentencing recommendation and justification, pp.2-3.]

A sentence of 80 months' imprisonment would reflect the seriousness of the defendant's conduct, promote respect for the law, and provide just punishment for the offense. A custodial sentence of 80 months would serve as an important deterrent not only to the defendant but also to individuals who are currently involved in or considering wire fraud and misstatements to banks in connection with real estate transactions as a means to fund their large purchases or even day-to-day expenses.

The defendant claims to be willing to pay a "fine" or some small amount of restitution, but it cannot be that now, after all of his obstructive comment, he can simply buy his way out of the problems he caused as if this were a civil matter while not taking any real responsibility or acknowledging what he did was criminal. To the contrary, a custodial sentence is warranted. While the government does not take a position on the amount of a fine, if any, the Court should impose in addition to the custodial sentence, the recommended fine of $10,000 would seem to be no more than a mere annoyance to this defendant based on the offense conduct and money involved in his business.

## V. Restitution

Section 3663A(a)(2) defines a victim as "a person directly and proximately harmed as a result of the commission of an offense." "Restitution seeks to compensate the victim for all the direct and proximate losses resulting from the defendant's conduct, not only for the reasonably forseeable losses." *U.S. v. Gossi*, 608 F.3d 574, 581 (9th Cir. 2010). The purpose of restitution is to put the victim back in the position he or she would have been but for the defendant's criminal conduct." *Id.*, at 581. Restitution is mandatory for any offense "in which an identifiable victim or victims have suffered a physical injury or pecuniary loss." *See* 18 U.S.C. § 3663(A)(c)(1)(B). The calculation of loss for restitution is therefore different than the calculation for sentencing, where the purpose is punitive. *United States v. Gordon*, 393 F.3d 1044, 1052 n.6 (9th Cir. 2004).

"The amount of restitution is . . . limited to the victim's actual losses." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010) (quoting *United States v. Bussell*, 504 F.3d 956, 964 (9th Cir. 2007)). "Actual loss for restitution purposes is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *Hunter*, 618 F.3d at 1064 (quoting *Bussell*, 504 F.3d at 964).

In *Davoudi*, 172 F.3d at 1136, the Ninth Circuit held that unlike calculating losses for sentencing, when calculating restitution, the Court should value the property at the time the bank obtained ownership of the bank. This is when "the lender either (1) receives the net proceeds from the sale of the collateral to a third party at the foreclosure sale [] or (2) takes title to the real estate collateral at the foreclosure sale, at which time 'the new owner had the power to dispose of the property and receive compensation.'" *Yeung*, 672 F.3d at 601 (citations omitted). Also unlike in the loss calculation, the victim is entitled to interest owing at the time of the sale. SBIC took title by following the trustee sale, and was due interest as of December 10, 2013, under the express terms of the loan agreement the defendant signed of $ 1,091,835.54. [*See* Exh. A at ¶ 40.] This amount is therefore reasonably added to the loss amount of $3,116,729.82, for a total damage amount sought by SBIC (and supported by sufficient documentation which may be reasonably relied upon for this purpose) of $4,208,565.36.[6]

Defendant's self-serving and unsupported claim that he owes "less than $450,000," a mere ten percent of the total amount of restitution to which the bank believes it is entitled (and which it can demonstrate by a preponderance of the evidence, *see* Exh. A), should be discredited, and the restitution amount should be unchanged.

For the foregoing reasons, the government requests an award of restitution in the amount of $4,208,565.36, to SBIC, with a note that the amount may be reduced by any amount of compensatory damages received by SBIC for the same loss in a civil proceeding.

## VI. Conclusion

For almost half a decade, between 2008 and 2013, the defendant persisted in lying to SBIC about

[6] The government has elected, with the concurrence of the bank, not to assert a claim for additional interest on the damage amount that has continued to accrue during the pendency of the criminal litigation.

his financial health and the profitability of all of his hotel businesses. At no time during that period did he ever take steps to cure the misstatements and fraud at issue in the instant charges. Rather, he walked away from his obligations on the Brookdale property before the criminal nature of his actions were discovered and charged, and but for this investigation instigated following his third fire in 6 years, SBIC might never have been the wiser. Now he must pay for those crimes. In full consideration of the defendant's history and characteristics together with the other goals of sentencing, the government respectfully requests that the Court sentence the defendant to 80 months' imprisonment followed by three years of supervised release, and $4,208,565.36 in restitution. The Court is required to impose the $700 special assessment.

DATED: March 27, 2016

Respectfully submitted,

BRIAN J. STRETCH
United States Attorney

________/s/__________________
AMIE D. ROONEY
MAIA T. PEREZ
Assistant United States Attorneys